UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CASE NO. 2:21-CV-0407-SPC-NPM

NORMA CORY,

    Plaintiff,

vs.

WAL-MART STORES EAST, L.P.,
And VICTORIA GOODEN,

    Defendants.
_____/

## AMENDED COMPLAINT FOR DAMAGES

Plaintiff, NORMA CORY, by and through undersigned counsel, hereby sues the Defendants, WAL-MART STORES EAST, LP, (hereinafter referred to as "WALMART") and VICTORIA GOODEN, an individual, and alleges as follows:

## GENERAL ALLEGATIONS

1. This is an action for damages in excess of Thirty Thousand ($30,000.00) Dollars, not inclusive of attorney's fees and costs.

2. At all times material hereto, Plaintiff, NORMA CORY, was and is a resident of Lee County, Florida and is otherwise *sui juris*.

3. At all times material hereto, the Defendant, WALMART, was and is a Foreign Limited Partnership authorized to and doing business in the State of Florida as a retail market and doing business in Lee County, Florida.

4. At all times material hereto, the Defendant, VICTORIA GOODEN, was an individual residing in Lee County, Florida and was at all times material hereto acting as an employee and/or agent of the Defendant, WALMART.

5. Venue is proper because the cause of action stated herein arose in Lee County, Florida.

6. On or about June 21, 2019, Plaintiff, NORMA CORY, was lawfully on Defendant's premises, located at 545 Pine Island Road, North Fort Myers, Florida 33903, as an invitee, when she was caused to slip and fall, and sustain serious personal injuries due to a wet, dirty, slippery and unreasonably dangerous liquid substance on the floor at or near the McDonalds restaurant located inside the Defendant's premises.

7. At all times material hereto, the Defendant, WALMART, by and through its agents, servants, and/or employees, had dominion, possession and/or control of the subject premises.

8. At all times material hereto, the Defendant's, WALMART, agents, servants, and/or employees acted within the course and scope of their employment.

## COUNT I – NEGLIGENCE OF WALMART

Plaintiff, NORMA CORY, hereinafter reaffirms and realleges each and every allegation contained in the General Allegations above, as if fully set forth herein, and further alleges:

9. At all times material hereto, the Defendant, WALMART, owed a non-delegable duty to maintain the common areas of the subject premises in a reasonably safe and proper condition for a class of persons, of which Plaintiff, NORMA CORY, is a member.

10. At all times material hereto, the Defendant, WALMART, owed a non-delegable duty to warn business invitees, such as Plaintiff, NORMA CORY, of concealed dangers which were or should be known to Defendant, WALMART, and which are unknown to business invitees, such as Plaintiff and cannot be discovered by her through the exercise of reasonable care.

11. At all times material hereto, Defendant, WALMART, by and through its agents, servants, and/or employees, negligently and carelessly maintained the subject premises by committing one or more of the following acts of omissions and/or commission:

a. By allowing wet, dirty, slippery and unreasonably dangerous liquid substances and/or contaminants to accumulate and remain on the floor of Defendant's premises, so as to cause Plaintiff to slip and fall and sustain serious personal injuries;

b. By failing to properly maintain and/or inspect the common areas of its premises to ensure they were in a reasonably safe and proper condition for invitees such as the Plaintiff;

c. By creating a dangerous condition on its premises;

d. By allowing a dirty, slippery dangerous condition to occur with such regularity on its premises that the condition was foreseeable;

e. By failing to warn Plaintiff of the aforementioned condition and the risk involved in as much as the presence of Plaintiff was known or reasonably foreseeable by Defendant;

f. By failing to have the proper policies and procedures and/or in the alternative negligently failing to follow its own policies and procedures within which to inspect, maintain, and/or discover the above-mentioned dangerous condition and remedy same;

g. By failing to change its policies and procedures, despite its knowledge of similar repeated, and foreseeable incidents;

h. By allowing dirty, liquid substances and/or other slippery liquid residue to spill, and/or accumulate in such a manner so as to create a concealed dangerous condition along the ingress and egress route intended for the general public's use;

i. By failing to properly train, educate, and/or instruct its agents, employees, and/or servants on how to inspect, detect, clean and/or maintain the common areas of Defendant's premises;

  j. By failing to provide a safe ingress and/or egress on its premises in violation of ANSI Standard and South Florida Building Codes, which are marked and outlined in Exhibit "A" which is attached hereto;

  k. By failing to adhere to the subject floor surface maintenance requirements;

  l. By installing and/or maintaining a floor surface on Defendant's premises which did not have the proper non-skid or slip resistant properties or surface, and was otherwise not fit for its intended purpose as a walking surface;

  m. By installing and/or improperly maintaining a floor surface which Defendant knew or should have known became unreasonably slippery and dangerous when wet; and

  n. By failing to use floor mats, carpets and/or non-skid surfaces in areas where foreign substances are spilled and/or deposited on a regular basis.

12. At all times material hereto, Defendant, WALMART, either knew or should have known of the existence of the dangerous condition on its premises through the exercise of ordinary care and should have taken action to remedy the condition and/or warn the Plaintiff about the presence of the condition.

13. At all times material hereto, Defendant, WALMART, was negligent in creating the dangerous condition and/or causing the condition to exist or remain on the floor of the subject premises.

14. The condition causing Plaintiff to fall occurred with such frequency and regularity that it was reasonably foreseeable to Defendant, WALMART, and thus, it was predictable and preventable.

15. The condition causing Plaintiff to fall existed for a sufficient length of time that it was reasonably foreseeable to Defendant, WALMART, and thus, it was predictable and preventable.

16. Plaintiff neither knew nor should have known of said danger by the exercise of due care.

17. As a direct and proximate result of the aforementioned negligence of the Defendant, WALMART, Plaintiff, NORMA CORY, suffered bodily injury and resulting pain and suffering, inconvenience, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, inconvenience, medical expenses, including the expense of surgery, hospitalization, medical and nursing care and treatment, and aggravation of previously existing conditions. The losses are permanent and continuing, and Plaintiff, NORMA CORY, will suffer such losses into the future.

**WHEREFORE,** Plaintiff, NORMA CORY, demands judgment for damages, costs, and interest from Defendant, WAL-MART STORES EAST, LP. together with any other relief the Court deems just and appropriate.

## COUNT II – NEGLIGENCE OF VICTORIA GOODEN

Plaintiff, NORMA CORY, hereinafter reaffirms and realleges each and every allegation contained in the General Allegations above, as if fully set forth herein, and further alleges:

18. The Defendant, VICTORIA GOODEN, was working for the Defendant, WALMART, at the subject premises and owed Plaintiff a duty of reasonable care to maintain the premises in a reasonably safe condition for the safety of business invitees, such as the Plaintiff.

19. At all times material hereto, Defendant, VICTORIA GOODEN, negligently failed to exercise reasonable care relating to the subject substance on the floor of the store while under her control in that she failed to take reasonable precautions to maintain said premises in safe condition.

20. At all times material hereto, Defendant, VICTORIA GOODEN, personally committed a tort by wet mopping the floor at or near the grocery exit, thereby creating a dangerous condition which caused Plaintiff to slip and fall and/or by failing to warn Plaintiff of the dangerous

condition created by the Defendant, VICTORIA GOODEN, thereby causing the Plaintiff to slip and fall upon same.

21. At all times material hereto, Defendant, VICTORIA GOODEN, personally committed a tort by negligently creating the slippery transitory dangerous substance by her own negligence and/or causing the dangerous condition to exist or remain on the floor of the subject premises at or near the grocery exit, thereby causing the Plaintiff to slip and fall upon same.

22. At all times material hereto, Defendant, VICTORIA GOODEN, was assigned to maintain and clean the area from the dangerous substance which she created and/or failed to clean, thereby causing the Plaintiff to slip and fall upon same.

23. At all times material hereto, Defendant, VICTORIA GOODEN, personally committed a tort as she was aware of the subject substance as she was in the process of cleaning same, but failed to warn Plaintiff of the dangerous condition as Plaintiff approached the area of incident, causing the Plaintiff to slip and fall upon same.

24. The Defendant, CANDACE LEWIS, breached her duty of care to the Plaintiff, by committing one or more of the following acts of omissions or commission:

   a. By failing to use reasonable care in the maintenance and/or cleaning up of liquid substances and other contaminants from the floors;
   b. By allowing dirty, slippery liquids and other substances/contaminants to accumulate and remain on the floor of Defendant's premises, so as to cause Plaintiff to slip and fall and sustain serious personal injuries;
   c. By failing to properly maintain and/or inspect the common areas of its premises to ensure they were in a reasonably safe and proper condition for invitees such as the Plaintiff;
   d. By creating a dangerous condition on the premises;
   e. By allowing a dirty, slippery dangerous condition to occur with such regularity on its premises that the condition was foreseeable;

  f. By failing to warn Plaintiff of the aforementioned condition and the risk involved in as much as the presence of Plaintiff was known or reasonably foreseeable by Defendant;

25. At all times material hereto, Defendant, VICTORIA GOODEN, either knew or should have known of the existence of the dangerous condition on the premises through the exercise of ordinary care and should have taken action to remedy the condition and/or warn the Plaintiff about the presence of the condition.

26. The condition causing Plaintiff to fall occurred with such frequency and regularity that it was reasonably foreseeable to Defendant, VICTORIA GOODEN, and thus, it was predictable and preventable.

27. The condition causing Plaintiff to fall existed for a sufficient length of time that it was reasonably foreseeable to Defendant, VICTORIA GOODEN, and thus, it was predictable and preventable.

28. Plaintiff neither knew nor should have known of said danger by the exercise of due care.

29. As a direct and proximate result of the aforementioned negligence of the Defendant, VICTORIA GOODEN, Plaintiff, NORMA CORY, suffered bodily injury and resulting pain and suffering, inconvenience, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, inconvenience, medical expenses, including the expense of surgery, hospitalization, medical and nursing care and treatment, and aggravation of previously existing conditions. The losses are permanent and continuing, and Plaintiff, NORMA CORY, will suffer such losses into the future.

**WHEREFORE,** Plaintiff, NORMA CORY, demands judgment for damages, costs, and interest from Defendant, VICTORIA GOODEN, together with any other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, NORMA CORY, demands trial by jury of all issues triable as a right by a jury.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 9th day of September, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

          **SIMON TRIAL FIRM**
          Attorneys for Plaintiff
          2601 S. Bayshore Drive Suite 1010
          Miami, Florida 33133
          Telephone: (305) 375-6500
          Facsimile:   (305) 375-0388
          Email: Pleadings@simon-trial.com

By:    */s/ Kyle A. Quintana*
          RONALD M. SIMON, ESQ.
          Florida Bar No.: 165262
          KYLE A. QUINTANA, ESQ.
          Florida Bar No.: 1003110

## SERVICE LIST

*Attorneys for Defendant*
Amanda J. Sharkey Ross, Esq.
John M. Marra, Esq.
Henderson, Franklin, Starnes & Holt, P.A.
1715 Monroe Street
Fort Myers, Florida 33902
Telephone: (239) 344-1249
Emails: amanda.ross@henlaw.com; tracey.salerno@henlaw.com; john.marra@henlaw.com; susan.peters@henlaw.com



**Designation: F 1637 – 95**

# Standard Practice for Safe Walking Surfaces[1]
This standard is issued under the fixed designation F 1637; the number immediately following the designation indicates the year of original adoption or, in the case of revision, the year of last revision. A number in parentheses indicates the year of last reapproval. A superscript epsilon (ε) indicates an editorial change since the last revision or reapproval.

## 1. Scope

1.1 *Scope*—This practice covers design and construction guidelines and minimum maintenance criteria for new and existing buildings and structures. This practice is intended to provide reasonably safe walking surfaces for pedestrians wearing ordinary footwear. These guidelines may not be adequate for those with certain mobility impairments.

1.2 *Application*—This practice addresses elements along and in walkways including floors and walkway surfaces, sidewalks, short flight stairs, gratings, wheel stops, and speed bumps. Swimming pools, bath tubs, showers, natural walks, and unimproved paths are beyond the scope of this practice.

1.3 Conformance with this practice will not alleviate all hazards; however, conformance will reduce certain pedestrian risks.

1.4 The values stated in inch-pound units are to be regarded as the standard. The SI units given in parentheses are for information only.

1.5 *This standard does not purport to address all of the safety concerns, if any, associated with its use. It is the responsibility of the user of this standard to establish appropriate safety and health practices and determine the applicability of regulatory limitations prior to use.*

## 2. Referenced Documents

2.1 *ANSI Standard:*
ANSI-Z535.1 Safety Color Coding[2]

## 3. Terminology

3.1 *Definitions:*

3.1.1 *bollard*—a thick, low, short, post, often of iron or steel and usually used in series, provided for the purpose of excluding or diverting motor vehicles from a road, lawn, or path.

3.1.2 *carpet*—permanently secured fibrous floor covering.

3.1.2.1 *Discussion*—Area rugs, mats, and runners are not considered to be carpet for the purpose of this practice.

3.1.3 *cross slope*—the slope of a pedestrian walkway that is perpendicular to the direction of travel.

3.1.4 *element*—an identifiable part of an architectural component, for example, a stair handrail, tread, riser, or landing.

3.1.5 *fair*—a smooth transition between adjacent surfaces.

3.1.6 *foreseeable pedestrian path*—any place where a pedestrian could reasonably be expected to walk.

3.1.7 *footwear*—shoes, including boots, sandals, slippers, or foul weather gear such as overshoes and rubbers, or a combination thereof.

3.1.8 *planar*—flat.

3.1.9 *ramp*—a walkway surface that has a slope steeper than 1:20 (5 %).

3.1.10 *sidewalk*—a paved surface, such as concrete or asphalt, usually parallel and adjacent to streets.

3.1.11 *slip resistance*—the relative force that resists the tendency of the shoe or foot to slide along the walkway surface. Slip resistance is related to a combination of factors including the walkway surface, the footwear bottom, and the presence of foreign materials between them.

3.1.11.1 *Discussion*—Slip resistance is dependent upon many factors such as: material and condition of the walkway surface; material and condition of the shoe sole or heel material; the physical abilities of the user; the attempted or proposed activities of the user, and; the presence of any contaminants on any or both of the surfaces, and other factors.

3.1.12 *slip resistant*—the provision of adequate slip resistance to reduce the likelihood of slip for pedestrians using reasonable care on the walking surface under expected use conditions.

3.1.13 *walkway surface hardware*—includes manhole covers, cellar doors used as walking surfaces, junction box covers, cleanout covers, hatches, sidewalk elevator covers, sewer grates, utility covers, and similar elements that pedestrians can reasonably be expected to walk on.

3.1.14 *walkway*—walking surfaces constructed for pedestrian usage including floors, ramps, walks, sidewalks, stair treads, parking lots and similar paved areas which may be reasonably foreseeable as pedestrian paths. Natural surfaces such as fields, playing fields, paths, walks, or footpaths, or a combination thereof, are not included.

## 4. Walkway Surfaces

4.1 *General:*

4.1.1 Walkways shall be stable, planar, flush, and even to the extent possible. Where walkways cannot be made flush and even, they shall conform to the requirements of 4.2 and 4.3.

---

[1] This practice is under the jurisdiction of ASTM Committee F13 on Safety and Traction for Footwear and is the direct responsibility of Subcommittee F13.50 on Traction.

Current edition approved Nov. 10, 1995. Published January 1996.

[2] Available from American National Standards Institute, 11 W. 42nd St., 13th Floor, New York, NY 10036.

Copyright © ASTM, 100 Barr Harbor Drive, West Conshohocken, PA 19428-2959, United States.



PLAINTIFF'S EXHIBIT A

🏛 F 1637

4.1.2 Walkway surfaces for pedestrians shall be capable of safely sustaining intended loads.

4.1.3 Walkway surfaces shall be slip resistant under expected environmental conditions and use. Painted walkways shall contain an abrasive additive, cross cut grooving, texturing or other appropriate means to render the surface slip resistant where wet conditions may be reasonably foreseeable.

4.1.4 Interior walkways that are not slip resistant when wet shall be maintained dry during periods of pedestrian use.

4.2 *Walkway Changes in Level*:

4.2.1 Adjoining walkway surfaces shall be made flush and fair, whenever possible and for new construction and existing facilities to the extent practicable.

4.2.2 Changes in levels of less than ¼ in. (6 mm) in height may be without edge treatment. (See Fig. 1.)

4.2.3 Changes in levels between ¼ and ½ in. (6 and 12 mm) shall be beveled with a slope no greater than 1:2 (rise:run).

4.2.4 Changes in levels greater than ½ in. (12 mm) shall be transitioned by means of a ramp or stairway that complies with applicable building codes, regulations, standards, or ordinances, or all of these.

4.3 *Carpet*:

4.3.1 Carpet shall be maintained so as not to create pedestrian hazard. Carpet shall be firmly secured and seams tightly maintained. Carpet shall not have loose or frayed edges, unsecured seams, worn areas, holes, wrinkles or other hazards that may cause trip occurrence.

4.3.2 Carpet on floor surfaces shall be routinely inspected. Periodic restretching may become necessary. Periodic inspection is particularly important at step nosing edges.

4.3.3 Carpet and carpet trim (as measured when compressed) shall meet the transition requirements of 4.2.

4.3.4 Shag-type carpet shall not be used on stair treads. Carpeting should be firmly secured onto the tread and around the nosing.

4.4 *Mats and Runners*:

4.4.1 Mats, runners, or other means of ensuring that building entrances and interior walkways are kept dry shall be provided, as needed, during inclement weather. Replacement of mats or runners may be necessary when they become saturated.

4.4.2 Building entrances shall be provided with mats or runners, or other means to help remove foreign particles and other contaminants from the bottom of pedestrian footwear. Mats should be provided to minimize foreign particles, that may become dangerous to pedestrians particularly on hard smooth floors, from being tracked on floors.

4.4.3 Mats or runners should be provided at other wet or contaminated locations, particularly at known transitions from dry locations. Mats at building entrances also may be used to control the spread of precipitation onto floor surfaces, reducing the likelihood of the floors becoming slippery.

4.4.4 Mats shall be of sufficient design, area, and placement to control tracking of contaminants into buildings. Safe practice requires that mats be installed and maintained to avoid tracking water off the last mat onto floor surfaces.

4.4.5 Mats, runners, and area rugs shall be provided with safe transition from adjacent surfaces and shall be fixed in place or provided with slip resistant backing.

4.5 *Illumination*:

4.5.1 Minimum walkway illumination shall be governed by the requirements of local codes and ordinances or, in their absence, by the recommendations set forth by the Illuminating Engineering Society of North America (IES) (Application and Reference Volumes).

4.5.2 Illumination shall be designed to be glare free.

4.5.3 Illumination shall be designed to avoid casting of obscuring shadows on walkways, including shadows on stairs that may be cast by users.

4.5.4 Interior and exterior pedestrian use areas, including parking lots, shall be properly illuminated during periods when pedestrians may be present.

4.6 *Headroom*—A minimum headroom clearance of 6 ft 8 in. (2.03 m), measured from the walkway surface, shall be provided above all parts of the walkway. Where such clearance is not provided in existing structures, the low clearance portions of the walkway shall be safely padded, marked with safety contrast color coding (for example, see ANSI-Z535.1) and posted with appropriate warning signs.

4.7 *Exterior Walkways*:

4.7.1 Exterior walkways shall be maintained so as to provide safe walking conditions.

4.7.1.1 Exterior walkways shall be slip resistant.

4.7.1.2 Exterior walkway conditions that may be considered substandard and in need of repair include conditions in which the pavement is broken, depressed, raised, undermined, slippery, uneven, or cracked to the extent that pieces may be readily removed.

4.7.2 Exterior walkways shall be repaired or replaced where there is an abrupt variation in elevation between surfaces. Vertical displacements in exterior walkways shall be transitioned in accordance with 4.2.

4.7.3 Edges of sidewalk joints shall be rounded.

## 5. Walking Surface Hardware

5.1 Walking surface hardware within foreseeable pedestrian paths shall be maintained flush with the surrounding surfaces; variances between levels shall be transitioned in accordance with 4.2.

5.2 Walking surface hardware within foreseeable pedestrian paths shall be maintained slip resistant.

5.3 Walking surface hardware shall be installed and maintained so as to be stable under reasonable foreseeable loading.

## 6. Stairs

6.1 *General*:

6.1.1 Stairways with "distracting" forward or side views shall be avoided. A "distracting" view is one which can attract the stair user's attention, (for example, advertisements, store displays), thus distracting the stair user.

6.1.2 Step nosings shall be readily discernible, slip resistant,

FIG. 1 Changes in Levels of Less Than ¼ in. (6 mm)

2